Steven A. Lang
21 Broadway
Denville, New Jersey  07834-2766
(973) 983-6100
Attorney for Plaintiff

United States District Court
District of New Jersey

RECEIVED
MAY 2 1 2007
AT 8:30_____M
WILLIAM T. WALSH
CLERK

No.: 07-2102

Robert A. Bloom,

    Plaintiff,

v.

Princeton University,

    Defendant.

**VERIFIED AMENDED COMPLAINT**

Plaintiff, Robert A. Bloom, states this Verified Amended Complaint[1] as follows:

1.    Plaintiff resides at 430 West 23rd Street, New York, New York 10011. He is 77 years old.

2.    Plaintiff was graduated from Princeton University *summa cum laude* in 1951.

3.    Plaintiff thereafter earned the LL.B degree from Harvard University in 1957, and a Ph.D degree from New York University in 1974 in the area of International Relations and Constitutional Law.

4.    Defendant Princeton is an educational institution located in Princeton, Mercer County, New Jersey, 08554.

5.    Princeton University has dedicated itself to fostering free speech and peaceful assembly basic to a vigorous exchange of ideas. Princeton has dedicated its campus to that purpose.

---

[1] Per F.R. Civ. P. 15(a), "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served."

6.  Princeton University has taken on the mantle of a public forum for purposes of free speech, and is, therefore, obligated to permit reasonable expressional activities including the right to peacefully protest activities sanctioned by the University. Princeton has adopted regulations recognizing that obligation. True copies of the regulations at the times hereto relevant are attached as Exhibits A and B.

7.  As is set forth, below, Plaintiff attempted to exercise that right on two separate occasions. As is further set forth, below, Princeton, through the acts of its employees and/or local, state, or federal authorities acting as Princeton's agents, unreasonably interfered with Plaintiff's attempts to exercise that right on those two occasions.

8.  On or about early-2004, Plaintiff became aware that Princeton would be hosting all-day symposium commemorating the centennial birthday of George F. Kennan.

9.  Thereafter, Plaintiff notified Princeton that he would be attending the symposium, and he included a check for the attendance fee.

10. Plaintiff finds war, in general, to be repugnant, and he is especially opposed to the war in Iraq.

11. Plaintiff was quite disappointed when he learned on or about January 26th, 2004 that the keynote speaker at the symposium was to be then-Secretary of State Colin L. Powell.

12. Plaintiff, therefore, wrote to the Princeton University President Shirley Tilghman, on January 26th, 2004 that while recognizing the University's right to have Secretary Powell speak, Plaintiff would be exercising his right to protest Secretary Powell's appearance. A true copy of this letter is affixed hereto as Exhibit C (attachments omitted).

2

13. President Tilghman replied to Plaintiff via letter dated February 11th, 2004. A true copy of the Tilghman letter is affixed to as Exhibit D.

14. President Tilghman's letter, in pertinent part, states,

> "We would support the rights of anyone who might wish to demonstrate opposition to U.S. policy in a non-disruptive manner at the time of the Secretary's visit."

15. Relying on both his right of free speech under the New Jersey state Constitution and President Tilghman's express invitation to protest, Plaintiff attended the symposium on February 20th, 2004 fully intending to exercise his right of peaceful protest per New Jersey law without interfering with Secretary Powell's speech.

16. Secretary Powell spoke in Alexander Hall. Upon arriving at the Hall, Plaintiff discovered that Princeton had placed or allowed to be placed various barriers and obstacles preventing Plaintiff from coming within a reasonable distance from the entrance to the Hall. There were also security personnel, including members of campus security, the Princeton police department, New Jersey state troopers, and Federal agents. Some of these individuals appeared to be carrying machine guns and other weapons; they also presented a barrier to Plaintiff's reasonable access to the entrance.

17. Plaintiff, therefore, was forced to stand at an unreasonable distance from Alexander Hall. Plaintiff nonetheless attempted to protest from that distance, by silently holding a sign protesting Secretary Powell's presence and the war.

18. On two separate occasions, security personnel ordered Plaintiff to leave. On each such occasion, Plaintiff showed the security personnel President Tilghman's letter and refused to move. Although he refused to move, Plaintiff was nonetheless unable to exercise his right of peaceful protest per New Jersey law at that location.

19. Plaintiff then went to a nearby lecture hall to view a simulcast of Secretary Powell's speech, which was largely devoted to a partisan defense of the Iraq War. After the conclusion of Mr. Powell's speech, Plaintiff went outside to express his dissatisfaction with Mr. Powell and to the war to passersby and to Mr. Powell. Plaintiff thereafter discovered that this second location was one that Princeton had designated as a site for peaceful protest activities, an "authorized protest zone".

20. Plaintiff once again silently held the sign protesting Mr. Powell's presence and the war. At that time, a security guard employed by Defendant directed Plaintiff to leave the place where he was standing, without indicating where Plaintiff could stand.

21. Plaintiff then returned to approximately his original position outside of Alexander Hall, hoping to get close enough to those exiting the Hall, hopefully including Mr. Powell, so that these persons would be within sight and sound of Plaintiff while he exercised his right of free speech under New Jersey law, thereby making the exercise of that right meaningful.

22. Plaintiff then saw what he believed to be Secretary Powell exiting the hall. Plaintiff attempted to move closer to voice his protest. That effort was physically blocked by a security agent of the United States Department of State. Plaintiff offered to submit to a search of his person to demonstrate that he was not a security threat, but such offer was greeted by silence.

23. The next day, Plaintiff was at Princeton University for a different function, Alumni Day. He informed President Tilghman of the previous day's events and his outrage that he had been prevented from peacefully protesting. On that occasion, Tilghman said, in part, "Maybe we were intimidated by the security requests."

24. As a result of Princeton University's actions by and through its authorized agents and invitees, as described, above, Plaintiff was utterly deprived of the ability to protest in any meaningful manner.

25. Plaintiff thereafter received a written invitation from the Dean of the Woodrow Wilson School (his undergraduate department) to attend a keynote speech by Secretary of State Condoleezza Rice that was part of the celebration marking the Wilson School's 75th Anniversary. Plaintiff thereafter accepted the invitation.

26. On September 30th, 2005 Plaintiff attended the event. Before entering the gymnasium, Princeton personnel checked Plaintiff's name against a list of attendees. To that end, Plaintiff submitted governmentally issued photo identification. He then passed through airport-like security devices manned by security personnel.

27. Plaintiff listened to Secretary Rice's speech without protesting in any manner. At the conclusion of that speech and as some members of the audience applauded, Plaintiff stood some considerable distance from the dais, and uttered a few words, none of them profane or threatening, protesting the speech.

28. An armed Federal agent immediately and unceremoniously whisked Plaintiff out of the room, thereby, once again, depriving Plaintiff of his right to peacefully protest under New Jersey law. Plaintiff was also prevented from participating in a brief question-and-answer period following the conclusion of Secretary Rice's remarks.

29. No attempts were made to remove any individual who was expressing support for Secretary Rice.

30. For an extended period of time subsequent to these events Plaintiff had numerous written communications, telephone conversations, meetings with University officials, and testified to the University Council about his treatment at the Powell and Rice events. Integral to these communications, meetings, and testimony, were the concepts of (a) ensuring that Princeton would henceforth take all reasonable steps to ensure that there were no violations of an individual's rights; and (b) amending Princeton's regulations accordingly. These efforts failed.

## COUNT ONE

31. Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth at length herein.

32. Defendant's acts and omissions, as described above, violated Plaintiff's rights of free speech and assembly under New Jersey law.

33. Unless restrained, Princeton will continue to engage in such unlawful conduct.

WHEREFORE, Plaintiff demands permanent injunctive relief and judgment as follows:

a. Requiring Defendant to immediately promulgate reasonable regulations that allow peaceful protest within reasonable sight and sound of the objects of the protest;

b. Requiring Defendant to enforce those regulations in a manner that does not discriminate against speech on the basis of content;

c. Directing Defendant to refrain from unreasonably interfering with Plaintiff's, or any other's, right to non-disruptively, peacefully protest;

d. Counsel fees and costs of suit; and

6

    e.    Such other and further relief as the Court may in its discretion deem appropriate, including but not limited to legal fees, costs, and penalties, under the New Jersey Civil Rights Act.

RESPECTFULLY SUBMITTED,

Dated:    May ___, 2007
Denville, New Jersey

_____
Steven A. Lang
Attorney for Plaintiff

## VERIFICATION

I, Robert A. Bloom, Plaintiff, have read the foregoing allegations and I do hereby verify that each allegation, except those identified as being upon information and/or belief, is, to the best of my knowledge, true.

_____   5-10-07

Robert A. Bloom
Plaintiff